UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD LEE VANDUSEN,

                    Plaintiff,

    v.

NANCY BERRYHILL, Deputy Commissioner
of Social Security Operations,

                    Defendant.

Case No. 3:17-cv-05420-TLF

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS AND
REMANDING FOR FURTHER
PROCEEDINGS

       Ronald Lee Vandusen has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

## I.  BACKGROUND

       Mr. Vandusen filed applications for disability insurance benefits and for SSI benefits, alleging in both applications (filed May 2, 2014) that he became disabled beginning August 30, 2012. Dkt. 10, Administrative Record (AR) 22. Mr. Vandusen later amended his alleged onset date to February 15, 2014. *Id.* Both applications were denied on initial administrative review and on reconsideration. *Id.* A hearing was held on October 28, 2015 before an administrative law judge (ALJ). AR 45-72. Mr. Vandusen and a vocational expert testified.

ORDER - 1

The ALJ found that Mr. Vandusen could perform jobs existing in significant numbers in the national economy and therefore that he was not disabled. AR 37. The Appeals Council denied Mr. Vandusen's request for review on April 6, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Mr. Vandusen appealed that decision in a complaint filed with this Court on October 16, 2017. Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

Mr. Vandusen seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical opinion evidence from J. Keith Peterson, Ph.D., and Lezlie Pickett, Ph.D.; (2) in discounting Mr. Vandusen's testimony about his symptoms; (3) in assessing Mr. Vandusen's residual functional capacity; and (4) consequently, in finding Mr. Vandusen could perform other jobs existing in significant numbers in the national economy. Dkt. 12, 17.

For the reasons set forth below, the Court finds that the ALJ erred in evaluating the medical opinion evidence and Mr. Vandusen's testimony, and therefore in assessing Mr. Vandusen's RFC and finding him not disabled. Accordingly, the Court reverses the decision to deny benefits and remands for further administrative proceedings.

II. <u>STANDARD OF REVIEW AND SCOPE OF REVIEW</u>

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an

ORDER - 2

impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* And only the reasons the ALJ identified are considered in the scope of the Court's review. *Id.*

III. <u>THE ALJ'S EVALUATION OF THE MEDICAL OPINION EVIDENCE</u>

Mr. Vandusen argues the ALJ failed to properly consider the opinion evidence submitted by examining phsychologists Dr. Peterson and Dr. Pickett. Dkt. 12 at 4-9. He argues that examining psychologist Dr. Peterson's opinion should have been given greater weight by the ALJ and that examining psychologist Dr. Pickett's opinion should not have been given "great weight." Dkt. 12 at 4-9.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th

Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On the other hand, an ALJ need not accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. And a non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

a. Dr. Peterson, Examining Psychologist

Mr. Vandusen contends that the ALJ erred in rejecting the opinion of examining psychologist J. Keith Peterson, Ph.D. The ALJ's reasons for rejecting Dr. Peterson's opinion are not clear and convincing or supported by substantial evidence.

ORDER - 5

Dr. Peterson examined Mr. Vandusen in October 2014. AR 478. He interviewed and observed Mr. Vandusen, reviewed the "very limited medical records" available, performed a mental status examination and diagnostic interview, and conducted several tests, including the Wechsler Adult Intelligence Scale, Wechsler Memory Scale, and trail making tests. AR 478-79.

Dr. Peterson diagnosed Mr. Vandusen with "depressive disorder, recurrent moderate," post-traumatic stress disorder (PTSD) "with delayed express[ion]," and "psychological factors affecting compliance in treating a physical condition." AR 484. He attributed Mr. Vandusen's PTSD to his combat experience in the military. *Id.* He opined that Mr. Vandusen "has the cognitive skills to be able to work." *Id.* He noted that Mr. Vandusen had worked full time for eighteen months with PTSD and depression symptoms, but that Mr. Vandusen "lost that position [due] at least in part (probably in large part) to his long-term inability to relate to others and his PTSD symptoms." *Id.*

Dr. Peterson further opined that Mr. Vandusen had "a marginal prognosis for finding and keeping work at the current time," and that this prognosis "would improve to fair to good if plaintiff were to successfully complete a comprehensive PTSD treatment program." AR 485. Dr. Peterson explained:

> At the current time, his avoidance behaviors (a symptom of PTSD) would lead to irregular attendance at work. He could be expected to have trouble relating to coworkers and supervisors. He is able to learn and retain simple and more difficult material. He may have focusing lapses on the job, and could not be trusted in a job requiring constant focusing or with safety risks. He has a low frustration tolerance at the current time.

*Id.* Dr. Peterson added with respect to Mr. Vandusen's physical condition, "I saw no stamina issues, despite his pain issues. He will have significant issues with ambulation." *Id.* He concluded, "[i]f he were to return to work, a maintenance position like the one he had would seem optimal." *Id.*

ORDER - 6

The ALJ gave little weight to Dr. Peterson's opinion. AR 33. The ALJ listed several reasons: He found that "Dr. Peterson's opinion does not reflect the claimant's functioning over the longitudinal record," observing that Mr. Vandusen had been able to work despite his symptoms, that he had sought treatment only a month before the evaluation, and that several months later, in January 2015, he reported "that his depression had improved, his anxiety was reduced and his anger was decreased." *Id.* (citing AR 545-46). The ALJ reasoned that because Dr. Peterson gave opinions on Mr. Vandusen's physical limitations, and Dr. Peterson is not qualified to assess Mr. Vandusen's physical impairments, Dr. Peterson must therefore have "relied heavily on [Mr. Vandusen's] reports of symptoms as opposed to the objective evidence." *Id.* The ALJ referred back to his conclusion that Mr. Vandusen's "statements are not entirely credible." *Id.*

First, the ALJ's finding of inconsistency with the longitudinal record is unsupported. Dr. Peterson directly addressed Mr. Vandusen's prior work and, though he noted that Mr. Vandusen was able to work full time for eighteen months with PTSD and depression symptoms, found that Mr. Vandusen lost that job due "at least in part (probably in large part) to his long-term inability to relate to others and his PTSD symptoms." AR 484. Dr. Peterson's opinion is not contradicted: It does not conflict with Dr. Pickett's, because Dr. Pickett's evaluation was completed in September 2011—more than two years before the date of alleged onset—whereas Dr. Peterson's opinion was based on an evaluation conducted during the relevant period. Therefore, the "clear and convincing" standard of review applies to our review of the ALJ's reasons for rejecting the opinion. *Lester*, 81 F.3d at 832; *see Lubin v. Commissioner of Social Sec. Admin.*, 507 Fed. App'x 709 (9th Cir. 2013) (unpublished).

The ALJ was also incorrect in finding that Mr. Vandusen had only sought treatment in September 2014. Mr. Vandusen reported that after he was diagnosed with PTSD in May 2011, he attended therapy for a year and a half, and that he sought further treatment in August 2014 after his symptoms worsened. AR 712. Mr. Vandusen had also undergone over a year of mental-health treatment at the time of his previous ALJ hearing in 2012. *See* AR 81-82.

The ALJ's citation to a single report of improvement does not constitute substantial evidence contradicting Dr. Peterson's opinion. *See* AR 33, 545-46. An ALJ may not "cherry pick[ ]" evidence of improvement while ignoring evidence that favors disability. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ appears to have done so here: two weeks after that self-report, the psychologist leading Mr. Vandusen's group therapy for PTSD assessed that his "current progress towards meeting the treatment goals is best described as moderate." AR 543. She noted that Mr. Vandusen reported an increase in the frequency of his nightmares, while at the same time they became "significantly less distressing." In one measure of PTSD symptoms, Mr. Vandusen's symptoms had improved; by another measure, they had not. AR 543.

At Mr. Vandusen's treatment visits between September 2014 and March 2015, clinical scores measuring his PTSD symptoms fluctuated but remained well above the "clinical cutoff." *See* AR 526, 530, 537, 541, 543, 576. For example, on March 11, 2015, Mr. Vandusen's provider noted "a 4-point increase" in that score, "consistent with [Mr. Vandusen's] report that he was having increased distress related to increased contact with trauma-related content." AR 530.

Mr. Vandusen's treating provider was in the best position to evaluate his longitudinal medical history. *See Lester*, 81 F.3d at 830-32. But the ALJ rejected the opinion of Mr. Vandusen's doctor, Nathalie Paolino, D.O., who opined in January 2015 that Mr. Vandusen would be markedly impaired in completing a normal workday or workweek without interruption

ORDER - 8

by psychological symptoms, in performing at a consistent pace with a standard number and length of rest periods, and in interacting appropriately with the public. AR 894. Dr. Paolino also opined that Mr. Vandusen would average four or more absences per month. *Id.*

She explained that "Mr. Vandusen suffers from PTSD which precludes him to be in an environment that may trigger his symptoms. His symptoms are not controlled and [he] is currently unable to focus when he has an episode/flashback." AR 893. While Mr. Vandusen does not directly challenge the ALJ's rejection of Dr. Paolino's opinion, that opinion further undermines the ALJ's view of the longitudinal treatment history.

Second, the ALJ's rationale that because Dr. Peterson offered an opinion on Mr. Vandusen's physical limitations, he must have relied on Mr. Vandusen's self-reports in all his opinions, is entirely speculative. AR 33. The Ninth Circuit recently emphasized caution in rejecting psychiatric opinions, because those opinions are inevitably based in part on self-reports:

> 'The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology.' . . . Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

This reasoning would also apply to the opinion of Dr. Peterson, a psychologist. Dr. Peterson conducted numerous tests and explicitly found that Mr. Vandusen's self-reports were valid and the test result supported the symptoms he reported. AR 483-85. Dr. Peterson was also in a better position than the ALJ to evaluate Mr. Vandusen in light of his reported exaggerations to Dr. Pickett. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (ALJs "must be careful not to succumb to the temptation to play doctor"). And, even if the ALJ was correct in discounting Mr.

Vandusen's self-reports (as discussed below, the Court concludes he was not), the ALJ could not reasonably discount Dr. Peterson's opinions about Mr. Vandusen's psychological limitations on the basis that Dr. Peterson relied on self-reports about *physical* limitations.

b. Dr. Pickett, Examining Psychologist

Mr. Vandusen also challenges the ALJ's decision to assign "great weight" to the September 2011 opinion of Lezlie Pickett, Ph.D. In testing Mr. Vandusen's memory during an "adult memory psychological assessment," Dr. Pickett observed that Mr. Vandusen was not putting forth his best effort. AR 509-11. She concluded that Mr. Vandusen "is far more 'able' to function fully in an employment arena than he is 'willing' to do." AR 512. She diagnosed Mr. Vandusen as malingering. *Id.*

The ALJ gave "great weight" to Dr. Pickett's opinion. AR 33. He explained: "She performed an extensive evaluation of the claimant and reviewed his medical records. Her observations and testing of the claimant are consistent with her conclusion. Her opinion is also consistent with my credibility analysis noted above." *Id.*

The ALJ erred is assigning great weight to Dr. Pickett's opinion. First, Dr. Pickett offered the opinion two years and five months before the alleged onset date. Although an ALJ must consider "all evidence in [a claimant's] case record" in determining whether the claimant is disabled, 20 C.F.R. § 404.1520, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The ALJ did not address the untimeliness of Dr. Pickett's opinion. AR 33.

Further, while the ALJ cited Dr. Pickett's "extensive evaluation" of Mr. Vandusen as a reason to credit her opinion that he was malingering, the ALJ did not consider the opinions of Dr. Peterson and Dr. Paolino. Both those doctors gave their opinions during the relevant period.

ORDER - 10

Dr. Peterson's evaluation was also "extensive," and Dr. Paolino as Mr. Vandusen's treating provider was in a better position than Dr. Pickett to assess his symptoms and credibility. *See Orn,* 495 F.3d at 630. Dr. Peterson wrote that he had no doubt of the validity of Mr. Vandusen's self-report about depression symptoms, that he "observed closely for malingering signs" but did not see any, and that, instead, Mr. Vandusen "put forth excellent effort during the testing." AR 481, 483. Meanwhile, Dr. Paolino marked "no" when asked if Mr. Vandusen is "a malingerer." AR 889. (Similarly, Scott Hunt, Ph.D., another treating psychologist, found Mr. Vandusen to be "an adequate historian." AR 575.) The ALJ failed to discuss or even acknowledge these conflicting opinions from treating and examining doctors regarding Mr. Vandusen's reliability. AR 29-35; *see Orn,* 495 F.3d at 630 (ALJ may not ignore non-supporting evidence).

Finally, in crediting Dr. Pickett's opinion that Mr. Vandusen malingered, the ALJ could not rely on the agreement between that opinion and the ALJ's own assessment of Mr. Vandusen's credibility. *See* AR 33. As discussed below, the ALJ erred in finding Mr. Vandusen not credible. That finding therefore cannot support the ALJ's evaluation of Dr. Pickett's opinion. *Compare Ghanim*, 763 F.3d at 1162 ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.").

## IV. THE ALJ'S CONSIDERATION OF MR. VANDUSEN'S TESTIMONY

Next, Mr. Vandusen contends that the ALJ failed to provide clear and convincing reasons supported by evidence in the record to support his credibility determination. The Court agrees.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess[ ]" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may

ORDER - 11

not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen*, 749 F.2d at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective description of symptoms, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995) (citation omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834.

If affirmative evidence does show malingering, courts still require the ALJ give specific and legitimate reasons to discount the claimant's testimony. *See Baghoomian v. Astrue*, 319 F. App'x 563, 565-66 (9th Cir. 2009) (unpublished); *Olivar v. Berryhill*, No. 2:17-CV-00657-DWC, 2017 WL 4857089, at *5 (W.D. Wash. Oct. 27, 2017). While the ALJ does not need to make a specific finding of malingering, the evidence as a whole must support such a finding. *Carmickle*, 533 F.3d at 1160 n.1; *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

Mr. Vandusen testified to the following: He cannot feel either foot because of his neuropathy. AR 54, 64. He lives with chronic pain because of his back. AR 56, 64. His anxiety and hyper-vigilance, as symptoms of PTSD, cause him between three and five panic attacks each week. AR 62. His ability to focus is limited, as he can only watch a TV show or a movie for 15-20 minutes before losing focus. AR 63. He needs to lay down for 1-2 hours each day. AR 65. He can only sit for 15-20 minutes at a time, stand without a cane for 5-10 minutes at a time, and stand with a cane for 15-20 minutes at a time. *Id.* In a function report, Mr. Vandusen wrote that

ORDER - 12

he needs his wife to accompany him when he goes to the grocery store; that he cannot hold an object for too long before his hands go numb; and that he has trouble hearing when there is a lot of background noise. AR 335.

In addition, Mr. Vandusen reported that on a typical day he supervises his grandson in getting ready for school, fixes his grandson cereal for breakfast, he picks his grandson up from school, and he sits with grandson while grandson informs him about grandson's day. AR 335. He added that his grandson meets him in the parking lot so that Mr. Vandusen can avoid interacting with other parents and children. *Id.*

The ALJ found that Mr. Vandusen's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." With respect to Mr. Vandusen's mental-health limitations, the ALJ explained that Mr. Vandusen's "allegations of disabling symptoms are inconsistent with the objective evidence of file." AR 29. Specifically, the ALJ found that Mr. Vandusen's symptoms have improved since he started therapy and are managed with medication, that his testimony about his symptoms, "such as the frequency of alleged panic attacks, appear exaggerated" compared to his past reports and treatment record, that his activities—such as caring for his grandson and attending group therapy—are also inconsistent with his reported symptoms, and that he "has made statements that do not enhance the credibility of his allegations." AR 29-31.

These were not clear and convincing reasons, supported by substantial evidence, to reject Mr. Vandusen's testimony about his mental-health symptoms.

As a preliminary matter, contrary to the Commissioner's assertions, the ALJ was required to give clear and convincing reasons to reject Mr. Vandusen's testimony. The ALJ did not make a finding of malingering in discussing the weight of Mr. Vandusen's testimony, but he referred

ORDER - 13

obliquely to "statements that do not enhance the credibility of his allegations." AR 31. As discussed above, the ALJ erred in assigning great weight to Dr. Pickett's opinion that Mr. Vandusen malingered, because she gave that opinion in 2011; thus it was of limited relevance and overshadowed by more relevant opinions given during 2014 and 2015 by an examining psychologist, Dr. Peterson, and a treating doctor, Dr. Paolino. The ALJ's erroneous reliance on Dr. Pickett's opinion, and the lack of evidence of malingering after the alleged onset date, shows that the record as a whole would not support a malingering finding. *See Carmickle*, 533 F.3d at 1160 n.1. Accordingly, the ALJ was required to give clear and convincing reasons to reject Mr. Vandusen's statements. *Lester*, 81 F.3d at 834.

The ALJ did not fulfill this standard. Nor would the ALJ's reasons meet the lower bar of specific and legitimate reasons that would be required if the record did contain affirmative evidence of malingering. *See Baghoomian*, 319 F. App'x at 565-66.

The Court also finds that Mr. Vandusen's past work at a storage facility did not justify the ALJ's rejection of his testimony. Mr. Vandusen worked at a storage facility for 18 months before the alleged onset date of February 15, 2014. *See* AR 29. He testified that he had to quit that job because his anxiety had worsened, he "couldn't deal with people anymore," and he found the people he interacted with threatening. AR 51-53.

Several months after Mr. Vandusen quit the job, Mr. Vandusen saw Dr. Hunt and reported that his PTSD symptoms had "escalated in the last six months." AR 572, 575-76. Dr. Hunt found Mr. Vandusen to be "an adequate historian," and made provisional diagnoses of PTSD and "neurocognitive disorder due to traumatic brain injury." AR 575. Soon after, Dr. Peterson found Mr. Vandusen to be a "reasonably valid historian" and wrote that he had "no doubt of the validity of [Mr. Vandusen's] self-report." AR 478, 482-83. He wrote that Mr.

Vandusen "lost th[e] position at least in part (probably in large part) to his long-term inability to relate to others and his PTSD symptoms." AR 485. A claimant's unsuccessful work attempt outside the relevant time period cannot justify discounting the claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007).

Likewise, the record does not support the Commissioner's assertion that Mr. Vandusen gave inconsistent statements about his reason for leaving the storage facility job. Soon after leaving that job, Mr. Vandusen reported reasons to Dr. Peterson that are consistent with his testimony at that hearing: that "he was not able to work due to intense anxiety and anger that occur in the workplace, along with strong urges to leave and avoid situations that lead to these emotions." AR 487. He told Dr. Peterson that he quit because of chronic conflicts with his supervisor—"a young snotty rich kid"—and that he was afraid to be around groups of people. AR 480. He also said that coworkers had "questioned [his] integrity" in how an expense account was used. AR 480. Mr. Vandusen's statements at the time are consistent with his testimony at the hearing. To the extent the ALJ relied on Mr. Vandusen's past work and purported inconsistencies in his statements about his reasons for leaving that work, the ALJ erred.

In addition, the ALJ also lacked support for the finding that Mr. Vandusen's symptoms had improved since starting therapy and are managed with medication. The ALJ recounted the following record: In October 2014, Todd Clemens, M.D., assessed Mr. Vandusen's PTSD as moderately severe and noted that he was showing "a partial but favorable response" to venlafaxine. AR 564. On January 27, 2015, Mr. Vandusen reported to a counselor that his depression had improved, his anxiety was reduced, his anger was decreased, and his mood was better. AR 545-46.

But on January 30, 2015, Mr. Vandusen reported that his nightmares had increased in

ORDER - 15

frequency, though he also reported that the nightmares had become significantly less distressing and his sleep quality improved in many areas. AR 543. This was in Mr. Vandusen's last of five therapy sessions designed to reduce the frequency and intensity of trauma-related nightmares and improve overall sleep quality. AR 543. In June 2015, at Mr. Vandusen's last of twelve Cognitive Processing Therapy sessions, he showed decreased avoidance of internal and external stimuli and decreased isolation and irritation. AR 594. And through September 2015, the ALJ noted, Mr. Vandusen obtained refills of Ambien and venlafaxine without complaint of ineffectiveness or side effects. AR 30-31, 832-38.

This Court must consider the record as a whole in reviewing the ALJ's decision for substantial evidence. While the ALJ has the responsibility of determining inconsistencies in the evidence in the first instance, he errs in "cherry picking" evidence that disfavors disability while ignoring evidence that favors disability. *Morgan*, 169 F.3d at 603; *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Here, the ALJ appears to have selected some evidence of improvement from a longitudinal record containing decidedly more troubling results. Between September 2014 and June 2015, Mr. Vandusen received scores on the PTSD Checklist-5, which measures symptoms of PTSD as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) (5th ed. 2013). His scores fluctuated but remained well above the "clinical cutoff" for PTSD. *See* AR 526, 530, 537, 541, 543, 576. As noted above, at the conclusion of Mr. Vandusen's group therapy in January 2015, his therapist assessed his progress as "moderate." AR 543. The longitudinal record thus does not support of the ALJ's finding of significant improvement.

Third, the ALJ also lacked support for the conclusory finding that Mr. Vandusen's activities, which include caring for grandson and participating in group therapy, are inconsistent

ORDER - 16

with the degree of his alleged limitations. AR 31. The "mere fact" that a claimant "cares for small children does not constitute an adequately specific conflict with her reported limitations." *Trevizo*, 871 F.3d at 682. As in *Trevizo v. Berryhill*, the ALJ here did not describe activities that would be "'transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). In fact, the ALJ did not describe any specific activities. AR 31. Likewise, it was inaccurate for the ALJ to find that Mr. Vandusen's ability to participate in group therapy was inconsistent with his testimony that he suffers debilitating symptoms—those symptoms were the very reason he was attending therapy. Accordingly, Mr. Vandusen's activities were not a valid reason to find Mr. Vandusen lacks credibility.

The ALJ's other two reasons were also unsupported: The ALJ found that because Mr. Vandusen waited seven months after he stopped working before he sought treatment, Mr. Vandusen's symptoms likely were not as bothersome as he claimed. AR 32. However, Mr. Vandusen did obtain refills of medication during those seven months. AR 354-55, 384-85, 574. Further, Mr. Vandusen reported to Dr. Hunt that during this time period after quitting his job that his PTSD symptoms "escalated in the last six months," and Dr. Hunt found Mr. Vandusen to be "an adequate historian." AR 572, 575-76.

Finally, the ALJ found that Mr. Vandusen's testimony that his nightmare disorder became worse and his nightmares more intense was inconsistent with his statements to a counselor in January 2015. AR 33. Mr. Vandusen stated during group therapy that his nightmares had increased in frequency but decreased in intensity. AR 543. The ALJ provides no reason, however, for choosing to credit Mr. Vandusen's January 2015 statement over Mr.

ORDER - 17

Vandusen's self-report at the August 2016 hearing, particularly given that Mr. Vandusen's symptoms waxed and waned throughout his treatment. *See* AR 515, 519, 529, 541-78.

The ALJ thus failed to provide clear and convincing reasons to reject Mr. Vandusen's testimony.[1]

## V.  THE ALJ'S RFC ASSESSMENT

A claimant's RFC assessment is used at step four of the five-step sequential evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found Mr. Vandusen had the RFC

> **to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can occasionally climb ladders, ropes and scaffolds; occasionally stoop and crawl; frequently climb ramps and stairs; and frequently balance, kneel and crouch. He needs to avoid concentrated exposure to excessive cold/heat, industrial noise, vibration, airborne pollutants and hazards. He can perform work that involves simple routine tasks with few, if any, changes in routine**

---

[1] The ALJ also found that Mr. Vandusen's testimony that on an average day he can sit for only 15-20 minutes at a time before he has to get up and walk is inconsistent with Dr. Peterson's report that Mr. Vandusen was able to sit for over ninety minutes during testing. AR 32-33, 482. Mr. Vandusen does not appear to challenge the ALJ's rejection of his testimony about his physical impairments. *See* Dkt. 12, pp. 11-13.

**or setting; no public contact; and occasional superficial contact with coworkers.**

AR 27 (emphasis in original). But because as discussed above the ALJ erred in failing to properly weigh the medical opinion evidence or Mr. Vandusen's testimony, the ALJ's RFC assessment cannot be said to completely and accurately describe all of Mr. Vandusen's functional limitations. Accordingly, the ALJ erred here as well.

Mr. Vandusen contends that the ALJ erred in failing to include additional limitations in the RFC. The ALJ did not include Mr. Vandusen's use of a cane in Mr. Vandusen's RFC. AR 27. Nor did the ALJ include a sit/stand option. AR 27. The ALJ did give significant weight to Dr. Hale's medical opinion, which stated that Mr. Vandusen "[c]an complete light levels of work with use of breaks and rest periods in normal work environment to give [him] option of sitting and standing to relieve pain." AR 34, 146.

At the hearing, |the ALJ asked the vocational expert if the use of a cane would change the availability of the three jobs the expert identified. AR 67-68. The vocational expert replied that he thought two of the three jobs would remain, but the job of "marker" would be precluded. AR 68. The ALJ then asked whether a required sit/stand option would change the availability of those jobs, and the vocation expert replied that he thought the jobs of electronic worker and mail sorter would still remain. AR 69.

Mr. Vandusen asserts that he was prescribed a cane and needed to use it any time he went out of the house. Dkt. 12, p. 10 (citing AR 60). He suggests that the ALJ "may not even have noticed" Dr. Hale's opinion regarding a sit/stand option because while the ALJ gave significant weight to Dr. Hale's opinion, the ALJ did not include sit/stand option in his summary of Dr. Hale's opinion. *Id.* Finally, Mr. Vandusen argues that these errors are not harmless because while the vocational expert testified regarding the jobs available for someone requiring the use of cane

ORDER - 19

and a sit/stand option separately, he did not testify what jobs would be available for someone who required both the use of a cane and a sit/stand option. Dkt. 12, p. 11.

The ALJ did not err in omitting from the RFC Mr. Vandusen's use of a cane and a sit/stand option for two reasons: First, Mr. Vandusen did not provide the required medical documentation establishing a need for the use of cane.

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

Social Security Ruling 96-6p, *available at* 1996 WL 374185, at *7. No such documentation is in the record. Thus, the ALJ did not err in failing to include the use of the cane in the RFC.

Second, Dr. Hale's statements do not indicate that Mr. Vandusen requires a sit/stand option. Dr. Hale opined that Mr. Vandusen "[c]an complete light levels of work *with use of breaks and rest periods in normal work environment* to give [him] option of sitting and standing to relieve pain." AR 146 (emphasis added). Dr. Hale's statements indicate that Mr. Vandusen is able to use normal breaks and rest periods to alternate sitting and standing and does not require a sit/stand option. The ALJ did not error in failing to include such an option in the RFC.

## VI. THE ALJ'S STEP FIVE DETERMINATION

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett*, 180 F.3d at 1098-99; 20 C.F.R. §§ 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports

the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found Mr. Vandusen could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as Mr. Vandusen. AR 35-36. But because as discussed above the ALJ erred in assessing Mr. Vandusen's RFC, the hypothetical question the ALJ posed to the vocational expert—and thus that expert's testimony and the ALJ's reliance thereon—cannot be said to be supported by substantial evidence or free of error.

## VII.  REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS

The Court may in its discretion remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *see Trevizo*, 871 F.3d at 682. If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the court should remand the case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only when all three of the following criteria are met:

- First, "the record has been fully developed and further administrative proceedings would serve no useful purpose;"

- Second, "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and

- Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

If, after considering all of those questions, it appears that a remand would be unnecessary, the district court still has discretion to remand for additional proceedings if, considering the record as a whole, there are reasons for serious doubt as to whether the claimant is disabled. *Leon*, 880 F.3d at 1045.

Here, Mr. Vandusen asks that the Court remand for an award of benefits, but he did not address the above criteria in his briefing. *See* Dkt. 12, p. 15; Dkt. 17. In addition, the Court is not persuaded that "further proceedings would serve no useful purpose." *See Trevizo*, 871 F.3d at 682-83. Nor is it clear that the Commissioner would be required to find Mr. Vandusen disabled if the improperly rejected evidence is credited as true. Accordingly, remand with an instruction to award benefits is not appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined Mr. Vandusen to be not disabled. The Commissioner's decision to deny benefits is therefore REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 29th day of May, 2018.

Theresa L. Fricke
United States Magistrate Judge

ORDER - 23